RANDY S. GROSSMAN
Acting United States Attorney
PETER KO, CBN 191994
Assistant U.S. Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.: (619) 546-7359
Email: peter.ko2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>BENEDICTA ARREOLA (3),<br><br>                    Defendant. | No. 06CR590-H<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO ARREOLA'S MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT, 18 U.S.C. 3582(c)(1)(A)(i) |

Benedicta Arreola has served about 185 months of her 270-month sentence for helping to run a group that trafficked huge amounts of methamphetamine and providing a gun to be used to collect a drug debt. See generally ECF 1 (complaint); ECF 356 at 3-5 (plea agreement; pin cites for ECF citations are to the page of the .pdf file). With credit for good behavior, she is due to be released in May 2025. She wants her sentence reduced to time served or less than it is. That relief requires extraordinary and compelling reasons and consideration of the factors in 18 U.S.C. 3553(a). 18 U.S.C. 3582(c)(1)(A)(i). Even then reduction is discretionary, not mandatory. See *id.*; *United States v.*

*Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021). (Arreola has met the administrative exhaustion requirements.)

1. The motion plays up Arreola's circumstances to reach the extraordinary and compelling threshold. There are some reasons for skepticism. The motion says "the FCI Dublin community—[BOP] employees and incarcerated women alike—come together with a unified request" for Arreola's release. Mtn. 1. Two employees provided letters, neither on official letterhead. The warden, who is charged with and accountable for such decisions and ultimately speaks for the facility, disagreed Arreola's case meets the standard for early release and denied her request. Mtn., Ex. A at 3. That is division, not unity.

The motion also quotes letters from five inmates. Even by prisoner standards, they are dubious witnesses and references. One picked up a stranger at a bar, fought with and strangled the stranger, then the group she was with lit the victim on fire. See Mtn., Ex. M at 1; Dept. of Justice, Busby Man Sentenced to Life in Murder of Woman, Dec. 21, 2018, available at bit.ly/3rPBPXw (last visited Aug. 8, 2021). A second drugged her husband, drove him to Mexico, strangled him with clothesline, and dumped his body. See Mtn., Ex. M at 2; Dept. of Justice, San Bernardino Woman Pleads Guilty in Kidnaping and Murder of Husband, Aug. 30, 2005, available at bit.ly/3rTc0Ws (last visited Aug. 8, 2021). A third helped arrange the kidnaping of a prosecutor's father; the aim was to extort the prosecutor to release a cohort from prison. Orders had been issued to kill the

2

father and bury the body when authorities rescued him. See Mtn., Ex. M at 3; Dept. of Justice, Goodall Sentenced to Life in Prison for Kidnapping Case of Wake Forest Man, June 6, 2017, available at bit.ly/3jo39Zh (last visited Aug. 8, 2021). A fourth kidnaped, tortured, and shot and killed an informant scheduled to testify against her boyfriend accused of drug charges. See Mtn., Ex. M at 4-5; *United States v. Bell*, 113 F.3d 1345, 1347 (3d Cir. 1997). The last sold drugs and is tied to the Mexican Mafia which is tame only by comparison. See Mtn., Ex. M at 6-7; *United States v. Yanez*, 05CR199-BEN (S.D.Ca.), ECF 15 and ECF 50 at 3-4.

The motion repeatedly says Arreola has served "the equivalent of 216 months" in custody with good time credits. E.g., Mtn. 3. That is an unconventional way of putting it as 185 months have passed since her March 2006 arrest. The phrasing seems designed to make it look like Arreola has served more time than she has which raises questions about what else in the motion may be oversold.

Shorn of more questionable hyperbole, the motion makes a credible case—based mainly on the internal progress report by Arreola's case manager, Mtn., Ex. K—that Arreola has behaved well in custody, is dependable and a hard worker, has been accountable and helpful to others including the prison staff during trying times, and has sought to educate herself in myriad ways, including getting her GED. No doubt she is, as she says, ashamed of her crimes, regrets the effect on her children, and

is different from the person she was in her 20s. We do not question the sincerity of her desire to continue proving she has changed when she is released.

All these things are positive and commendable. But they also are expected, not extraordinary and compelling. See, e.g., *United States v. Ugbah*, -- F.4th --, 2021 WL 3077134, at *2 (7th Cir. July 21, 2021) ("[m]ost nonviolent criminals maintain good disciplinary records; that Ugbah fits the norm is not extraordinary"). More than that: many reasons the motion cites for Arreola's release—her education, leadership, work history, mentorship, conduct, and transformation, Mtn. 6-10—are mentioned ultimately to prove her "extraordinary rehabilitation." Mtn. 15. Yet by statute "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. 994(t); accord *United States v. Bryant*, 996 F.3d 1243, 1249 (11th Cir. 2021); *United States v. Fine*, 982 F.3d 1117, 1119 (8th Cir. 2020). That may be because rehabilitation in general is not extraordinary. One study found that over 50 percent of federal prisoners released in 2005 were not rearrested in the eight years after and over 68 percent were not convicted of another crime. Hunt and Dumville, U.S. Sentencing Comm'n, Recidivism Among Federal Offenders: A Comprehensive Overview 5 (2016), available at bit.ly/3jzWyLj (last visited Aug. 8, 2021).

The motion tries to get around 994(t) by pairing rehabilitation with Arreola's service to others in the prison,

4

her conditions of confinement at points in the pandemic, and her "unusually long" sentence. The sentence also is not enough on its own. Section "3582(c)(1) does not treat a long but lawful sentence as itself an extraordinary or compelling reason for a lower sentence." *Ugbah*, 2021 WL 3077134, at *2. At any rate, Arreola's sentence was less than the guidelines recommended—it still is after later changes made the drug guidelines less onerous for some—and the outfit that she helped run probably distributed thousands of pounds of methamphetamine. (One supplier who was not their only source estimated he gave the Arreolas 800 pounds of methamphetamine in the 10 months before their arrest, and Arreola's personal participation in the crime dated back years. See ECF 1, ECF 484-1 at 3-4; PSR 3-4 and 6.) Then there is the gun she gave a co-conspirator that was to be used to threaten others or worse. ECF 1 at 9. And her then-juvenile son she used to complete a drug sale, one of multiple juveniles used in the crime. ECF 1 at 7, 10-11. Arreola's sentence is unremarkable, not unusual, for a crime of this type and magnitude. If anything, it was relatively lenient. It is easy to find traffickers who got more time for much less methamphetamine. See, for example, the defendants in *United States v. Fierro*, 807 F. App'x 572, 574 (8th Cir. 2020) (unpublished) (420 months; 12.95 kilos of methamphetamine plus role enhancement); *United States v. Haren*, 743 F. App'x 711, 713 & n.2 (8th Cir. 2018) (unpublished) (life; 6 pounds of methamphetamine plus weapon, role, and obstruction enhancements

5

and several drug and fraud priors that did not score, according to the briefing, 2017 WL 4698232, at *16, *40); and *United States v. Flores*, 733 F. App'x 89, 90-93 (4th Cir. 2018) (unpublished) (life; 15-20 kilograms of methamphetamine, plus gun, threat, role, premises enhancements, according to the briefing, 2018 WL 1020413, at *2, *9-12).

The motion compares Arreola's sentence to sentences imposed for other crimes under other guidelines. It says a lot, none of it helpful to the request, that the motion must look anywhere but to sentences for comparable methamphetamine traffickers to make a case that her sentence for methamphetamine trafficking is unusual. It also echoes the fallacious complaint at sentencing that Arreola faced more time than the average if she killed someone. See ECF 484 at 5-6. One instance of unlawfully possessing a gun, a sex crime, or a violent crime, including murder, undoubtedly is serious and must be punished harshly. That pales, however, compared to the harm wrought by years of large-scale drug trafficking like Arreola's which, from the statistical correlations between drugs and all manner of crime, see, e.g., ECF 484 at 6, inevitably contributes to far more deaths, violence, and collateral crime than singular criminal acts. Multiple justices made that point in *Hamelin v. Michigan*, 501 U.S. 957 (1991), in deeming "false to the point of absurdity" efforts to characterize the possession of 650 grams of cocaine as nonviolent and victimless. *Id.* at 1002 (Kennedy, J., concurring). So did another in *Rummel v. Estelle*, 445 U.S.

263 (1980), noting traffickers "may inflict greater bodily harm upon members of society than the person who commits a single assault." *Id.* at 296 n.12 (Powell, J., dissenting).

The motion points to Arreola's confinement conditions at times in the pandemic. The argument is time in lockdown afraid of contracting the virus is harder and more punitive than pre-pandemic custody time, so it should earn a bigger credit against her sentence. Mtn. 19-20. (The motion does not contend current health risks support Arreola's early release. She is vaccinated, and FCI Dublin presently reports one case among inmates and staff. Federal Bureau of Prisons, COVID-19 Coronavirus, COVID-19 Cases, available at www.bop.gov/coronavirus/ (last visited Aug. 9, 2021).)

Courts are split on whether this warrants 3582 relief. Some accept the premise but warn again it is "insufficient on its own" to meet the extraordinary and compelling threshold. *United States v. Rodriguez*, 492 F. Supp.3d 306, 311 (S.D.N.Y. 2020). Others have rejected it. They say "lockdowns [in general] are a routine fact of life for incarcerated defendants and are hardly extraordinary." *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 331 (S.D.N.Y. 2020). Or they reason the pandemic has made more restrictive conditions commonplace across the BOP so an inmate's harder confinement is not out of the ordinary and compelling. E.g., *United States v. Garcia*, 2021 WL 3269774, at *3 (N.D. Tex. July 30, 2021) (unpublished); *United States v. Bush*, 2021 WL 3097417, at *3 (S.D.N.Y. July 21, 2021)

(unpublished); *United States v. Toro*, 2021 WL 2186419, at *2 (S.D.N.Y. May 28, 2021) (unpublished); *United States v. Jiggetts*, 2021 WL 2042669, at *2 n.1 (M.D. Fla. May 21, 2021) (unpublished); *United States v. Coke*, 2021 WL 1578805, at *2 (S.D.N.Y. Apr. 22, 2021) (unpublished); *United States v. Burks*, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021) (unpublished); *United States v. Johnson*, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021) (unpublished); *United States v. Colburn*, 2021 WL 257133, at *2 (D. Mass. Jan. 26, 2021) (unpublished); *United States v. Scronic*, 2020 WL 7048245, at *3 (S.D.N.Y. Nov. 30, 2020) (unpublished).

Beyond those obstacles in rationale, the justification in this instance has factual holes. Arreola's lawyer recites what Arreola told her. Mtn. 11-12. Yet no declarations are included so no facts are established. The motion asserts but offers no proof that Arreola's lockdown conditions have differed even from others' lockdowns during the pandemic. See Mtn. 20 (claiming she was locked down in a cell while unspecified others have been locked down in larger spaces). (In this upside-down world, a small cell might be safer than, preferable to, and less anxiety-inducing than a dorm because it is easier to keep a distance from others.) Key details are missing or vague like when exactly Arreola was locked down, how long, and to what extent that differed from confinement and periodic lockdowns before the pandemic—the foundation for saying pandemic lockdown is harsher and more punishing than normal confinement or normal lockdown

and, if so, by how much. And even if "extreme lockdown" is extraordinary and deserves a bigger credit against a sentence, no effort is made to explain how or why, say, five months of that justifies knocking down Arreola's sentence by roughly seven or four years.

That leaves the considerations (work history, educational assistance, mentorship, and help during the pandemic) that the motion cites as evidence of Arreola's rehabilitation but also doubles up as proof of her service to the community. Mtn. 17-18. Some courts say there is a difference, see *id.* at 18, but the distinction seems superficial. Highlighting a prisoner's community service is not done for its own sake. It is meant to show the person has grown and contributed in desirable ways making it, among possibly pertinent penal considerations, more likely she will be law-abiding and productive if released—in other words, is rehabilitated. That probably is why some of the few courts justifying release partly for community service end up substituting a synonym for rehabilitation, *Rodriguez*, 492 F. Supp.3d at 313 ("transformation"); or skip pretense and label community service "extraordinary rehabilitation," *United States v. Hasanoff*, 2020 WL 6285308, at *6 (S.D.N.Y. Oct. 27, 2020) (unpublished). Yet rehabilitation by another name or preceded by an adjective still is rehabilitation.

Suppose there is a difference, though. Even courts that have ordered release partly for community service have said appropriate cases are "rare," *id.*, and pointed to service "that

would be notable even outside the federal prison system." *United States v. Torres*, 464 F. Supp.3d 651, 664 (S.D.N.Y. 2020). Accord *Rodriguez*, 492 F. Supp.3d at 313. The motion puts special emphasis on Arreola's acts during the pandemic. Specifics are missing, however: what precisely she did and when, how often and for how long, how many others (if anyone) did the same, how she was endangered (or protected), whether anyone (including prison employees) refused, the consequences if she had not helped. It is unclear, for example, how doing laundry, delivering food or ice, or cleaning were especially dangerous if precautions were taken. (Maybe they were not, but the motion suggests they had masks, just not N95 masks.) See Mtn. 10-11. The gaps make it hard to gauge if her actions were as heroic as claimed. What is left is Arreola appears to be a dependable, valued worker who has been given assignments with increasing responsibility and performed well. She has mentored other inmates unofficially. She volunteered to teach and showed initiative by leading translations of materials to help others. These are good qualities that bode well for her, but they are not notable or out of the ordinary beyond prison walls. Successful businesses and communities usually have performers with these traits. (These are essentially the same attributes Arreola showed in helping to run their drug business. She was reliable and could be counted on, which is a reason the group was prolific.)

    2.   An extraordinary and compelling reason to lighten Arreola's sentence is mandatory, see 18 U.S.C. 3582(c)(1)(A), so

failing to establish one defeats the request and moots consideration of the 3553(a) factors. In any case, those factors also do not clearly favor release or reduction. (Arreola must prove the relief is deserved. *United States v. Grummer*, -- F. Supp. 3d --, 2021 WL 568782, at *1 (S.D. Ca. Feb. 16, 2021).)

    The court weighed the 3553(a) factors before and decided 270 months total was as low as it could go and still serve the goals of sentencing. (The motion makes much of a remark at the time about the sentence for the gun charge, apparently to imply the court would have imposed less if it could. E.g., Mtn. 1, 5. But the court had the ability—indeed, was required by 3553(a)—to impose a lesser total sentence, to as low as 180 months, if it thought that appropriate; it did not.) Arreola's track record in custody does not obviously shift the calculus towards one direction or the other. On one side her performance suggests she may be on a path to rehabilitation. But rehabilitation is not a 3553(a) consideration. See *United States v. Dunnigan*, 507 U.S. 87, 98 (1993) ("rehabilitation is no longer a goal of sentencing under the" Sentencing Reform Act of 1984). Of appropriate considerations, Arreola's custodial record may suggest less need to deter her or to protect others from her future crimes. Since she now has her GED, has taken many courses, and has worked several jobs, it may also indicate she need not remain in custody as long for education or vocational training. 18 U.S.C. 3553(a)(2)(B)-(D).

The movement in that direction, however, is offset by the harm a reduction would do to 3553(a) considerations in the other direction. Some factors are unaffected. Arreola's crimes still are aggravated because of the amounts, guns, threatened violence, multiple minors, duration, and her role. Her lack of prior convictions still has less significance because she was a full-time criminal for years. 18 U.S.C. 3553(a)(1) (requiring consideration of the nature and circumstances of the crime and defendant's history and characteristics). Other factors, though, would be disserved by a reduction. A lower sentence now implies Arreola's crimes were not as serious, in general or as first thought. Coming 15 years after she was sentenced, it suggests her sentence was less certain and rigorously decided than it was. Neither serves 3553(a)(2)(A) which says the sentence must convey the crime's seriousness and promote respect for the law. Nor is deterrence of others, 18 U.S.C. 3553(a)(2)(B), served if the price for large organized criminal activity of this type and scale is only 15 or 18 years. The opposite: it would be a sizeable break from the common perception of the usual risk for this level of crime. See, e.g., 21 U.S.C. 848(b) (mandatory life sentence for continuing criminal enterprise offense involving 1.5 kilos of actual methamphetamine or 15 kilos of mixture). And reduction would deepen the divide between Arreola's sentence, which is already below the recommended range, and sentences given to other defendants for comparable conduct. Examples are above and at ECF 484 at 9-10. That undercuts the mandate in

3553(a)(6) to avoid unjustified disparities. A full weighing of all the 3553(a) factors suggests Arreola's sentence is best left where it is. The motion to reduce her sentence should be denied.

DATED:    August 9, 2021

                                      Respectfully submitted,

                                      RANDY S. GROSSMAN
                                      Acting United States Attorney

                                      s/Peter Ko

                                      PETER KO
                                      Assistant U.S. Attorney